IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JEFFREY KRAMER, | Case No. 3:25-cv-50166 |
| Plaintiff, | |
| v. | Honorable Iain D. Johnston |
| GARY CARUANA and WINNEBAGO COUNTY, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Kramer pleaded guilty to one count of possession of child pornography under Illinois law. He was sentenced to four years in prison plus three years of mandatory supervised release. He received credit for time served that exceeded his term of incarceration and was immediately eligible to begin his term of supervised release. The Winnebago County Jail, where Kramer was housed, needed to transfer him to the Illinois Department of Corrections ("IDOC") for processing before he could begin serving his term of mandatory supervised release. Kramer spent 24 days in custody at the Winnebago County Jail—beyond the time he was sentenced to serve—before he was transferred to IDOC to start his supervised release term.

Kramer brought a § 1983 claim against Winnebago County and Winnebago County Sheriff Gary Caruana in his official capacity (collectively "Defendants") on behalf of himself and a putative class of similarly situated individuals. Kramer

1

alleges that Defendants acted with deliberate indifference to the risk that he was held beyond his term of incarceration in violation of his rights under the Eighth Amendment to the Constitution of the United States.

The matter is now before the Court on Kramer's motion to certify an injunctive class under Federal Rule of Civil Procedure 23(b)(2) and a damages class under Federal Rule of Civil Procedure 23(b)(3). [25]. Defendants oppose the motion. [33]. For the reasons explained below, the Court certifies both classes.

## I.    Background

### a.  Illinois Department of Corrections' Policy

In *Peoples v. Cook County*, the plaintiff challenged his delayed transfer from the Cook County Jail to IDOC for processing onto supervised release. 128 F.4th 901, 903 (7th Cir. 2025). Kramer mounts a similar challenge to his detention at the Winnebago County Jail. *Peoples'* discussion of IDOC policy bears repeating here.

In Illinois, certain prisoners receive credit toward their carceral sentence for time spent in custody awaiting trial. 730 ILCS 5/5-4.5-100(b). IDOC is responsible for calculating how any such credit applies to a sentence. 20 Ill. Adm. Code §§ 107.110(c), 107.150(a). IDOC is also solely responsible for processing convicted felons, like Kramer, onto mandatory supervised release. 730 ILCS 5/3-14-2(a). In all circumstances, convicted felons must be processed in-person at IDOC reception centers even if the felon has completed his sentence at the time of sentencing. These individuals are referred to by IDOC as "turnarounds." "Turnarounds are those who received a sentence of incarceration that includes credit equal to or exceeding the

2

time to be served, so they are transferred to IDOC only for processing onto supervised release." *Peoples*, 128 F.4th at 903-04.

### b. Winnebago County Jail's Transfer Policy

In his Complaint, Kramer alleges that Winnebago County had a policy of delaying the transportation of turnarounds until multiple people could be transferred to IDOC at once to maximize reimbursement for travel costs. Compl. at ¶¶ 22-24. Kramer seems to abandon this argument in his class certification motion and now instead argues that the Winnebago County Jail's policy governing transfer, General Order 5-640.17, fails to require jail officials to promptly identify and prioritize turnarounds and other inmates who became eligible for transfer to IDOC for processing onto mandatory supervised release shortly after sentencing.

The General Order states that "it shall be the policy of the Winnebago County Corrections Bureau to deliver to the Illinois Department of Corrections (IDOC), inmates committed by order of the court in a professional and orderly manner in accordance with IDOC guidelines." Dkt. 25 ex. 3. The order also sets out procedures for arranging transfers. It describes how transfers are scheduled and notes the documents inmates must have with them for processing. *Id.* But the order doesn't contain specific guidance about turnarounds or those otherwise eligible for processing onto mandatory supervised release. According to Kramer, this failure causes turnarounds—and others eligible for supervised release—to be detained beyond the expiration of their sentences.

3

## II. Discussion

### a. Legal Standard

#### i. The Underlying §1983 Claim

A 42 U.S.C. § 1983 claim places liability on a municipality or local government for constitutional injuries that derive from "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The failure to have a policy can itself be a policy and is a basis for a §1983 claim in appropriate circumstances. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 383 (7th Cir. 2017) (Sykes, J., dissenting).

The alleged constitutional injury in this case is the alleged over-detention of inmates in violation of the Eighth Amendment to the Constitution of the United States. Under the Eighth Amendment, "prison officials 'may not act with deliberate indifference toward a known risk that a prisoner is being held beyond his term of incarceration without penological justification.'" *Peoples*, 128 F.4th at 909 (quoting *Whitfield v. Spiller*, 76 F.4th 698, 714 (7th Cir. 2023)). Prison officials must have subjective awareness of the risk. *Whitfield*, 76 F.4th at 714. Prison officials are deliberately indifferent when they do nothing in the face of a known risk, turn a blind eye to a known risk, or "take[] action that is so ineffectual under the

4

circumstances that deliberate indifference can be inferred." *Peoples*, 128 F.4th at 909; *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *Sandra T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010).

Putting it all together, the putative class members will ultimately need to prove that they were over-detained in violation of the Eighth Amendment because of Defendants' policies or practices. With that framework in mind, the Court now turns to whether the class action is an appropriate vehicle for resolving this claim.

### ii. Class Certification

A court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ P. 23(a).

In order, the requirements are shorthanded as numerosity, typicality, commonality, and adequacy. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). If all four requirements of Rule 23(a) are met, a proposed class must fall within one of the categories of Rule 23(b). *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 891 (7th Cir. 2025). If a proposed class meets all four of the requirements of Rule 23(a) and is within one of the Rule 23(b) categories, the court must certify the class. *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023).

A court must perform rigorous analysis before certifying a class, but it shouldn't turn an inquiry about compliance with Rule 23 into an assessment of the

5

action's merits. *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015). The Court recognizes that it can be difficult to maintain this barrier at times. As part of this analysis, a court doesn't accept a plaintiff's factual allegation as true. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021). A court must take evidence and resolve factual disputes because a plaintiff must prove compliance with the rule. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell*, 800 F.3d at 373.

### b. The Four Requirements of Rule 23(a)

#### i. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable doesn't mean impossible, but the party seeking class certification must show that it's truly difficult or inconvenient to instead join the members of the class. *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). Numerosity turns on multiple factors including "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.* (quoting 7A *Wright & Miller's Federal Practice & Procedure* § 1762 (3d ed.)). Typically, a class of forty merits certification, but it's not a precise gauge. *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020). "Mere speculation" and "conclusory allegations" about the size of the class will not allow a court to conclude that joinder is impracticable. *Arreola*

*v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). However, courts can make "commonsense assumptions regarding the number of putative class members." 1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 3:13 (6th ed. 2025).

### 1. The Damages Class

In the Complaint, Kramer seeks to define the damages class as "turnarounds" who were immediately eligible for transfer to mandatory supervised release upon sentencing after April 20, 2023. Compl. at ¶32. This proposed definition would only encompass 31 individuals. Dkt. 25 ex. 2., Kramer now seeks to broaden the class definition to include all individuals who were detained at Winnebago County at least two days beyond the expiration of their sentence over the same time period, a list that would include a total of 44 people. Class definitions are flexible and can be refined to avoid certification problems. *See Messner*, 669 F.3d 802 at 825 (collecting cases).

Defining the class as all individuals who were over-detained is sufficiently definite. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). The class includes 44 people who were over-detained at the Winnebago County Jail beginning in April 2023. The class is easily ascertainable. It exceeds the forty-person benchmark. Although many of the individuals remain in Winnebago County, four are homeless. That will make joinder more difficult. Most claims are likely to be small given the relatively short periods of alleged over-detention. Given that the class exceeds the benchmark numerosity threshold and there are other reasons to

think that joinder will be impracticable, the damages class satisfies the numerosity requirement.

### 2. The Injunctive Class

The proposed injunctive class includes every current and future pretrial detainee who will be subject to the policy. Kramer seeks an injunction ordering Defendants to adopt a clear policy for quickly processing inmates who are eligible for transfer to mandatory supervised release.

The jail houses 700-800 detainees at any one time although not all are state inmates subject to the challenged policy. In fact, based on the damages class, it took three years for a sufficient number of individuals to pass through the jail subject to the policy to meet the 40-person numerosity benchmark. *See* dkt. 25 ex. 2 (10 individuals sentenced in 2023 were over-detained, 25 in 2024, and 9 in 2025). Defendants contend that any conclusion about the size of the injunctive class is speculative because it is uncertain how many individuals will be subjected to the policy going forward and all turnarounds are now processed in forty-eight hours. Kramer argues that the challenged policy is unchanged despite any adjustments made in practice by a particular official.

Plaintiffs don't need to allege the exact number of individuals in a prospective class. Rubenstein, *supra* § 3:15. Prospective class members can include "individuals who may work at a particular workplace or inhabit an institution (such as a jail or hospital) at a later time." *Id.* Courts often relax the numerosity requirement when facing unknown future class members. *Id.*

8

In this case, the Court is convinced that the proposed injunctive class is sufficiently numerous. Although the number of individuals subject to the challenged policy at any one time is small, joinder is impracticable because of the inherent difficulty in joining future class members and the transitory nature of the class. *See Copeland v. Wabash Cnty., Ind.*, 338 F.R.D. 595, 602 (N.D. Ind. 2021) (reaching a similar conclusion in an action challenging prison overcrowding). In short order, more than 40 individuals will be subject to the challenged policy. It will be easy to ascertain the identities of the class members based on the data kept by the Winnebago County Jail. The nature of any changes to the Jail's policy are best addressed on the merits.[1] The proposed injunctive class is sufficiently numerous.

### b. Commonality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This inquiry may overlap with the merits of the underlying claim. *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016). Commonality is satisfied if the class's claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. A claim is capable of class-wide resolution when its truth or falsity "will resolve an issue that is central to the validity of each claim." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). "Where the same conduct or practice by the same defendant gives rise to

---

[1] Defendants seem to argue that because individuals are now processed within 48 hours, the policy as it is now practiced is constitutionally sufficient. This is not necessarily the case. Any over-detention without penological justification caused by a prison official's deliberate indifferences can violate the Eighth Amendment. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014).

the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). One common question is enough for class certification. *Phillips*, 828 F.3d at 550.

Kramer alleges that all class members were over-detained because of Defendants' deliberate indifference to the risk that the jail's policy caused over-detention. More specifically, he alleges that Defendants failed to adopt a policy prioritizing transfers of those whose sentences had elapsed.

In *Orr v. Shicker*, the Seventh Circuit considered a class action brought by prisoners alleging that IDOC's protocols for treating hepatitis amounted to deliberate indifference. 953 F.3d 490, 497-99 (7th Cir. 2020). The court recognized that the class presented the common question of "whether the specified policies and practices to which all IDOC inmates are subjected expose them to a substantial risk of harm." *Id.* at 499. So too here. Kramer's proposed class challenges a policy that may expose all class members to the risk of over-detention. If the policy or lack thereof creates a risk of harm, it does so for every inmate.

Defendants argue that this action doesn't present common questions because the policy is constitutional. This only attacks the merits of the claim, so it's an inappropriate consideration at the class certification stage. *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). In fact, the constitutionality of the policy is itself a question capable of class-wide resolution.

Defendants also argue that individual factors are behind any inmate's alleged over-detention. Although that may be true, it misstates the commonality inquiry.

10

The challenged policy is sufficient "glue" to bind the classes together because it's possible to answer the question of the policy's impact on a class-wide basis. *Jamie S.*, 668 F.3d at 498. The Court's review of the policy will determine whether the classes were exposed to a substantial risk of harm. That's enough for the putative classes to meet the commonality requirement.

### c. Typicality

Kramer's claims and defenses must be typical of the class. Fed. R. Civ. P. 23(a)(3). "A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The named plaintiff's claims should "have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 597 (7th Cir. 1993)).

Defendants contend that Kramer's claim is not typical because he was immediately eligible for transfer to supervised release upon his sentencing, but at least some members of the putative class became eligible for transfer sometime after their sentencing. This is a distinction without a difference. The properly defined class challenges over-detention beyond the expiration of each class members' custodial sentences. Kramer challenges the same over-detention. His claim is no different from any other class member's.

### d. Adequacy

A plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The plaintiff and the class counsel must both be adequate representatives. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants don't object to the adequacy of Kramer's counsel and there is no reason to think that counsel wouldn't be adequate.[2] Accordingly, the Court focuses its analysis only on Kramer's adequacy.

Defendants contend that Kramer is an inadequate class representative because his claims are subject to an affirmative defense: failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA requires inmates to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a).

The PLRA makes clear that "a prisoner confined in any jail, prison, or other correctional facility" can't bring a claim "with respect to prison conditions" "until such administrative remedies as are available are exhausted." *Id.* A prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

---

[2] Indeed, it's the Court's experience that Ms. Nicholas—along with her former sidekicks (Louis Meyer and Daniel Kiss)—were excellent, professional, and ethical plaintiffs' civil rights counsel.

12

The PLRA doesn't define what qualifies as a prison condition. *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). The Seventh Circuit has recognized that "the obvious limit to the plain wording of the term 'prison conditions' is that only complaints relating to conditions within a prison or correctional facility are subject to the exhaustion requirements." *Id.* at 752. Kramer challenges the *fact* of his confinement, not the conditions of it. Although Kramer's claims relate to a specific prison policy, Kramer challenges his presence in the prison rather than any condition within the prison itself. This means that the PLRA doesn't apply to his claim. *See Cacho v. Gusman*, No. 11-225, 2026 U.S. Dist. LEXIS 32495, at *13-14 (E.D. La. Feb. 18, 2026) (recognizing this position as the "better view"); *Seth v. McDonough*, 461 F. Supp. 3d 242, 255 n.14 (D. Md. 2020) (same). The Court won't read out the word "conditions" from the PLRA. *Carcieri v. Salazar*, 555 U.S. 379, 391 (2009) (courts must give effect to every word Congress uses, if possible). Kramer and other putative class members are free to challenge the alleged over-detention in federal court without needing to exhaust administrative remedies in prison during a detention that may last as little as 48 hours.

Kramer argues that he is an adequate class representative because of the inherently transitory exception to mootness.[3] Under this exception, a named plaintiff's claims aren't mooted if "(1) it is uncertain that a claim will remain live for

---

[3] Kramer doesn't have any standing problems because standing "is assessed at the time of the original complaint, even if the complaint is later amended." *Series 17-03-615 v. Express Scripts, Inc.*, No. 3:20-CV-50056, 2023 U.S. Dist. LEXIS 130830, at *13-14 (N.D. Ill. July 28, 2023) (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005)). Kramer was in custody when he filed his original complaint, so he had standing at that time to challenge Defendants' policy.

any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). Kramer's claim meets both requirements. As Defendants note, all turnarounds are now processed within forty-eight hours. A court cannot certify a class that quickly. Likewise, there is a constant stream of individuals entering the jail, some of whom may ultimately be over-detained. Although Kramer's claims aren't mooted, he still needs to show that he is an otherwise adequate class representative.

In deciding whether a plaintiff is an adequate class representative, a court must consider whether the representative's interests are aligned with the class's and whether there are conflicts between class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). A court can fashion subclasses with separate representatives to avoid conflicts if necessary. *Howard*, 989 F.3d at 610.

At first, it might appear that Kramer's interests diverge from the injunctive class's because he has limited interest in obtaining injunctive relief and great interest in maximizing monetary relief. It's unlikely that he ever finds himself facing over-detention in Winnebago County Jail again. A closer look, however, reveals that this conflict is illusory. Any potential member of the injunctive class is likely to find themselves in a situation like Kramer's because the jail now processes inmates within 48 hours. They will be released before they can bring a claim and

14

certainly before the Court can certify a class. As a result, any conflict of interest at this stage is hypothetical and doesn't bar class certification.

## II.      Rule 23(b)(2)

Kramer seeks to certify the injunctive class under Rule 23(b)(2). Such a class must comply with the rule's two requirements: (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

According to Kramer, Defendants have a policy of delaying the transfer of "turnarounds" to IDOC. This implies that Defendants made an active decision to wait to transfer these inmates. This claim is not supported by the record. Instead, Defendants have a blanket policy that requires processing inmates per IDOC guidelines. The real issue is that Defendants lacked a policy to identify turnarounds—and others eligible for supervised release—and process them more quickly. Every member of the proposed injunctive class was affected similarly by this decision—all were detained for a period beyond the expiration of their sentence because Defendants didn't have a policy of specifically processing those eligible for transfer to mandatory supervised release. *See generally* dkt. 25; Boyd Dep. 133:16 - 147:15 (discussing problems with the current policy's failure to identify turnarounds). This is sufficient to satisfy the "act" requirement.

Final injunctive relief would be appropriate to this class as a whole. Kramer doesn't seek monetary relief for this class. He seeks an injunction ordering

15

Defendants to adopt new policies designed to end the over-detention of inmates. Dkt. 39 at 14. As discussed above, Kramer's claim is not mooted and the allegedly unconstitutional aspects of the policy are common to the class. An injunction would resolve the class members' claim. So, it is appropriate to certify the class under Rule 23(b)(2).

### III.   Rule 23(b)(3)

A court may not certify a class under Rule 23(b)(3) unless common questions of law or fact predominate over questions affecting only individuals and the class action is superior to other methods. Fed. R. Civ P. 23(b)(3).

#### a.  Predominance

The predominance inquiry is more demanding than the commonality assessment. *Amchem*, 521 U.S. at 623-24. It requires consideration of the balance between common and individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Individual questions involve evidence that varies from member to member. *Id.* Common questions exist when the same evidence allows each class member to make a "*prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)). The predominance inquiry focuses on the elements—not the merits—of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Indeed, "a district court must identify the elements of each claim, the proof necessary for each, the manageability of those issues at trial, and alternative procedural tools." *Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 961

(7th Cir. 2026). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton*, 907 F.3d at 1029.

A court can't simply count up the common issues, it must affirmatively decide how important the common issues are to the resolution of the action compared to the individual ones. *Id.* "[T]he predominance requirement is [only] met when common questions represent a *significant* aspect of a case." *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567, 574 (7th Cir. 2025) (second alteration in original) (quoting *Eddlemon*, 65 F.4th at 339). Usually if a class action "challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009).

This is a §1983 action so Kramer needs to allege that Defendants had a policy, practice, or custom that caused a constitutional injury. *Walker*, 940 F.3d at 966; *Glisson*, 849 F.3d at 379.

The alleged constitutional injury is the deliberate indifference to the risk of over-detention. This will ultimately require showing that Defendants subjectively knew that inmates were at risk of being over-detained without penological justification and disregarded that risk. *Peoples*, 128 F.4th at 909. Reducing this claim to its elements there are three key questions: (1) did Defendants' lack of a specific policy create a risk of over-detention; (2) did Defendants know about that

17

risk and turn a blind eye to it; and (3) did Defendants have penological justification for the detentions anyway?

Class-wide proceedings will generate common answers to the first two questions. Either the lack of a policy prioritizing transfer to mandatory supervised release created a risk of over-detention or it didn't. No individualized evidence is required.

Likewise, Defendants' knowledge is capable of class-wide resolution. The class doesn't need to show that Defendants knew that any particular class-member was over-detained, they just need to show that Defendants were *aware* of the *risk* of over-detention. *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016). In this case, there is strong evidence that Defendants didn't know that this risk existed. Dkt. 25 Boyd Dep. 131:19 - 132:4. But analysis of the merits of the claim is premature at this stage. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013). The key question, capable of class-wide resolution, is what Defendants knew about their policy's impact. The evidence used to answer that question will not vary from class member to class member. *See e.g. Peoples*, 128 F.4th at 909 (defendants' knowledge inferred from fact that over-detention would have happened with regularity).

The second part of the deliberate indifference inquiry—Defendants' response to the allegedly known risk—is also susceptible to class-wide proof. Defendants are deliberately different when they approve, condone, or ignore a known risk. *Figgs*, 829 F.3d at 903. In short, given evidence that Defendants didn't respond to any risk of over-detention in an individualized way, Kramer can show that Defendants failed

18

to respond to any risk of over-detention on a class-wide basis. If further discovery demonstrates that Defendants didn't generally know about the risk of over-detention and turn a blind eye to that risk, consequences exist.

The question of penological justification for any over-detention is less capable of class-wide resolution. Seven of the proposed class members were only over-detained for 2-3 days. Dkt. 25 ex. 2. Defendants' Rule 30(b)(6) deponent testified that 48 hours is approximately the fastest that it's possible to process turnarounds. *Id.* Boyd Dep. 138:17. It's possible that there are penological justifications for at least some of the class members' over-detentions. *See Peoples*, 128 F.4th at 909 ("the Sheriff detained Peoples for four days because IDOC would not accept him any sooner."); *Weaver v. Kelley*, No. 21 CV 203, 2023 U.S. Dist. LEXIS 223603, at *17-19 (N.D. Ill. Dec. 15, 2023) (noting on summary judgment that Will County could not be liable under for plaintiff's over-detention under §1983 because it lacked the authority to determine whether plaintiff was a turnaround). However, the predominance requirement is satisfied even if the litigation includes some individualized questions. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). What's more, predominance doesn't turn on the number of common questions but on the relative importance of those questions. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Individualized inquiries will also be required for the determination of any damages but "[a] phase requiring individual presentations of proof on all (or part of) an element of a claim does not defeat predominance." *Svoboda*, 168 F.4th at 964.

19

Ultimately, there are two common questions central to the constitutional injury issue springing from Defendants' policy: did Defendants' have a policy that created a risk of over-detention; and did they know about that risk and turn a blind eye to it? These common issues are at the heart of the litigation.

As to *Monell* liability, whether Defendants had a policy, custom, or practice is a common question. Defendants claim that causation is individualized because IDOC is responsible for calculating sentences and factors like when the Jail received an inmate's sentencing information from the Seventeenth Judicial Circuit Court and when the Jail sent that information to IDOC affected the time inmates spent in custody. This, however, is evidence that Defendants' policy didn't cause any unconstitutional over-detention. It's not evidence that the question of causation isn't susceptible to class-wide proof. Kramer can show that reason for any over-detention happened on a class-wide basis because Kramer's claim turns on the impact of a uniform legal policy. The ultimate legal question is not whether the Jail made erroneous determinations regarding each individual's detention, but whether the Jail's policy prevented or delayed the inquiry. Given the centrality of the common issues, the Court finds that the predominance requirement is satisfied.

### b. Superiority

The class action must also be superior to other methods of adjudicating the action. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663-64 (7th Cir. 2015). Rule 23(b)(3) sets out a list of four nonexclusive factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

20

> concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Courts regularly find that superiority is met when common questions predominate. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-2521, 2024 U.S. Dist. LEXIS 129625, at *54 (N.D. Ill. July 22, 2024). Superiority is achieved when a "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (alteration in original) (citation omitted).

High levels of individual damages cut against class certification. *Svoboda*, 168 F.4th at 967. "Other factors, including the lack of awareness of a claim, inability to access an attorney, or complex, costly discovery, can also hamper individual action regardless of the potential award." *Id.* Most class members were over-detained for a relatively short amount of time, but some spent several weeks detained. That could contribute to higher individualized damages for them and a greater interest in individual control of the litigation. Yet, as discussed above, no other former inmates have chosen to challenge the Winnebago County Jail's policy. This indicates that individual class members have limited interest in controlling the litigation themselves. It may also indicate that class members are unaware of the claim. Defendants' Rule 30(b)(6) deponent testified that he was surprised to learn that multiple individuals had been over-detained. If the person responsible for

21

scheduling the transfer of these individuals is unaware of any problem, it's very likely that the individuals over-detained are unaware, too.

As to the second factor, no other litigation is ongoing. That no other potential class members have sued despite the recurrence of this problem over several years suggests that the putative class members are disinterested in bringing or unable to bring their own claims. Certainly, the Western Division of the Northern District of Illinois is an appropriate forum for this action—Winnebago County Jail is approximately two blocks from the Stanley J. Roszkowski U.S. Courthouse in Rockford—but given the nature and circumstances of the claims, it's unlikely that separate actions would or even could be brought elsewhere.

As to the difficulty of managing the class action, Defendants argue that it will be necessary to conduct 44 mini-trials to examine all the circumstances surrounding an inmate's detention. It's true that in each case the Court will need to determine whether an inmate's over-detention had penological justifications and make individualized damages determinations. However, it would still be necessary to do the same if class members' claims were tried separately. The need for some separate proceedings doesn't prevent the certification of a class. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012). Indeed, some level of individualized assessment is necessary in any case proceeding under a properly certified class. But using a class action in this case will allow the Court to resolve the critical common questions at issue in the actions efficiently minimizing

22

the need for individualized inquiries. Accordingly, the class action is the superior method of resolving this litigation.

## IV.     Rule 23(g) – Appointment of Class Counsel

Having considered the relevant factors, the Court will appoint Kramer's counsel as class counsel under Federal Rule of Civil Procedure 23(g)(1). Kramer's counsel has ably investigated the claims in this action, has significant experience litigating § 1983 claims, and is willing to dedicate appropriate resources to this action.

## V.     Conclusion

Kramer's amended motion for class certification is granted as follows. The Court will certify a Rule 23(b)(3) damages class action consisting of all individuals detained at the Winnebago County Jail between April 2023 and the present who were detained at least two days beyond the expiration of their respective sentences because of Defendants' policy. The Court will also certify a Rule 23(b)(2) injunctive class consisting of all current and future detainees who are or will become eligible for transfer to mandatory supervised release while at the Winnebago County Jail but who are or will be detained at least two days beyond the expiration of their respective sentences because of Defendants' policy. Adele Nicholas and Mark Weinberg are appointed as class counsel.

Entered: April 23, 2026                                         By: _____

Iain D. Johnston
U.S. District Judge

23